UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SAFECO NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:25-cv-00052-JAW |
| GARRETT SOUCY, et al. | ) ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Based on the underinsured provisions of a personal automobile policy that the plaintiff insurer issued in favor of the defendants and Maine statutory law as interpreted by the Maine Supreme Judicial Court, the court concludes that the plaintiff insurer is entitled to reduce its payable underinsured coverage by the amount already paid to the defendants by the underinsured tortfeasor's insurance carrier.

## I.    BACKGROUND

On December 31, 2023, Dana Harriman negligently drove his motor vehicle in Waldo County, Maine and collided with a motor vehicle operated by Garrett Soucy and occupied by Siiri Soucy and their children (collectively, the Soucys), causing all the Soucys to sustain bodily injuries. *Decl. J. Compl.* ¶ 6 (ECF No. 1) (*Compl.*). Mr. Harriman was insured by Progressive Northwestern Insurance Company (Progressive) with limits of bodily injury liability coverage of $50,000 per person and $100,000 per accident, and Progressive paid the Soucys the full amount of bodily injury liability coverage of $100,000. *Id.* ¶¶ 9, 12. Safeco National Insurance

Company (Safeco) insured the Soucys under a personal automobile policy with available coverage under an uninsured/underinsured coverage provision of $100,000 per person and $300,000 per accident. *Id.* ¶¶ 5, 11. Safeco and the Soucys dispute whether Safeco owes the Soucys $200,000, reducing its coverage by the amount Progressive paid, or $300,000, the full amount of the uninsured/underinsured coverage under the Safeco policy without reduction. *Id.* ¶¶ 13-15.

On February 7, 2025, Safeco filed a lawsuit against Garrett Soucy and Siiri Soucy, seeking a declaratory judgment as to the amount of available coverage under the uninsured/underinsured provisions of the Safeco policy. *Id.* On February 18, 2025, the Soucys answered the complaint. *Defs.' Garrett Soucy and Siiri Soucy's Answer to Pl.'s Compl. for Decl. J.* (ECF No. 4). On September 28, 2025, Safeco filed a motion for summary judgment. *Pl.'s Mot. for Summ. J.* (ECF No. 11) (*Pl.'s Mot.*). With the motion, the parties filed a joint stipulation of facts that attached the Safeco policy and the Progressive Declaration Page. *Jt. Stip. of Facts* (ECF No. 12) (JSF). On October 14, 2025, the Soucys filed their opposition and a statement of additional material facts. *Defs.' Opp'n to Pl.'s Mot. for Summ. J.* (ECF No. 15) (*Defs.' Opp'n*); *Defs.' Additional Statement of Material Facts* (ECF No. 16) (DSAMF). On October 27, 2025, Safeco filed its reply. *Pl.'s Reply Mem. in Support of its Mot. for Summ. J.* (ECF No. 17) (*Pl.'s Reply*). On October 27, 2025, the Soucys filed additional authority. *Notice of Filing Suppl. Auth. on Defs.' Opp'n to Summ. J.* (ECF No. 18).

## II.   STATEMENT OF FACTS

The parties filed a joint stipulation of facts as follows:

Garrett Soucy and Siiri Soucy are citizens of the state of Maine and reside in Liberty, Maine.  JSF ¶ 1.  Safeco is an insurance company organized under the laws of the state of New Hampshire, with its principal place of business in Boston, Massachusetts.  *Id.* ¶ 2.  Safeco issued to the Soucys a personal automobile policy, effective from August 16, 2023 to August 16, 2024, Policy No. K3601567 (the Safeco policy) and a true and accurate copy of the Safeco policy is attached as Exhibit A.  *Id.* ¶ 3.

On December 31, 2023 a motor vehicle negligently driven by Dana Harriman collided in Waldo, Maine with an oncoming motor vehicle driven by Garrett Soucy and occupied by Siiri Soucy and their children (the Accident).  *Id.* ¶ 4.  The Soucys allege that all occupants of their vehicle sustained bodily injury as a result of the Accident and that such injuries, cumulatively, exceed $400,000.  *Id.* ¶ 5.

At the time of the Accident, Dana Harriman was insured under a personal automobile policy issued by Progressive, Policy No. 26336428 (Progressive Policy).  *Id.* ¶ 6.  A true and accurate copy of the Declaration[s] [Page] of the Progressive Policy is attached hereto as Exhibit B.  *Id.*  The Progressive Policy provides bodily injury liability insurance coverage with limits of $50,000 per person and $100,000 per accident.  *Id.* ¶ 7.  Progressive paid to the Soucys $100,000 in liability insurance (the per accident limit of the liability coverage of the Progressive Policy).  *Id.* ¶ 8.  Safeco provided written permission for the Soucys to settle with Progressive.  *Id.* ¶ 9.

3

The Safeco Policy provides uninsured/underinsured motor vehicle coverage with limits of $100,000 per person and $300,000 per accident. *Id.* ¶ 10. The Soucys then demanded that Safeco pay them $300,000 (the per accident limit of the uninsured motorist coverage of the Safeco Policy), pursuant to their interpretation of Maine statutory and caselaw. *Id.* ¶ 11. In response to the Soucys' $300,000 demand, Safeco made payments totaling $200,000 to the Soucys and their children, pursuant to its interpretation of Maine statutory and caselaw. *Id.* ¶ 12. The unresolved dispute between the Soucys and Safeco is whether the Soucys are entitled to the remaining $100,000 in Safeco's uninsured motorist coverage. *Id.* ¶ 13.

The Soucys filed a statement of additional material facts as follows:[1]

On/around April 24, 2025, Safeco tendered payment in the amount of $200,000 to the Soucys and their eleven minor children—all of whom are insureds under an underinsured motorist policy issued by Safeco. DSAMF ¶ 1. Pursuant to approval of involved minor settlements before the Waldo County Superior Court, the $100,000 settlement with the tortfeasor liability carrier and the $200,000 settlement under the subject policy were apportioned amongst all 13 claimants as follows:

---

[1] Safeco did not respond to the Soucys' statement of additional facts and pursuant to Local Rule 56(g)(1), the Soucys' additional facts are deemed admitted. *See* D. ME. LOC. R. 56(g)(1).

4

| Claimant | Apportionment of amounts from $100K recovery against tortfeasor | Apportionment of all claims under $200K UIM settlement with Plaintiff |
|---|---|---|
| Siiri Soucy | $50,000.00 | $50,000.00 |
| Garrett Soucy | $20,000.00 | $46,000.00 |
| Al. Soucy | $20,000.00 | $38,407.89 |
| N. Soucy | $1,000.00 | $7,483.47 |
| R. Soucy | $1,000.00 | $6,152.45 |
| Am. Soucy | $1,000.00 | $6,871.76 |
| B. Soucy | $1,000.00 | $6,640.07 |
| C. Soucy | $1,000.00 | $6,791.36 |
| J. Soucy | $1,000.00 | $6,640.07 |
| P. Soucy | $1,000.00 | $6,721.81 |
| S. Soucy | $1,000.00 | $6,070.44 |
| T. Soucy | $1,000.00 | $6,069.10 |
| W. Soucy | $1,000.00 | $6,151.58 |
| **Total:** | **$100,000.00** | **$200,000.00** |

*Id.* ¶ 2.

## III.   THE POSITIONS OF THE PARTIES

### A.   Safeco's Memorandum

Safeco proposes that "[a]s underinsured motor vehicle cases go, this one is not complicated." *Pl.'s Mot.* at 5.  This is because, as Safeco points out, "[t]he accident involved only two motor vehicles, and there are only two auto insurance policies in play." *Id.*

Safeco starts its analysis with Maine's uninsured motor vehicle statute, 24-A M.R.S. § 2902, as interpreted by the Maine Supreme Judicial Court.  *Id.* at 5-6. Safeco claims its right to an offset for the amount Progressive paid is found in § 2902(4) and (6)(A).  *Id.* at 6.  Safeco then argues that the Maine statute is buttressed

by the provisions of the Progressive and Safeco policies.  *Id.* at 7-8.  Safeco then analyzes Maine caselaw, which it says is consistent with its position.  *Id.* at 8-13.

### B.     The Soucys' Response

The Soucys see it differently.  *Defs.' Opp'n* at 1-7.  The Soucys maintain that the applicable statute is title 24-A, section 2902(6) of the Maine Revised Statutes, and they trace the legislative history of the statute and draw the conclusion that the statute focuses on the payments "actually made" to each claimant.  *Id.* at 2-4.  The Soucys argue that "[s]ubsection 6 ensures that any offset in available UIM [(uninsured/underinsured motorist)]  coverage reflects actual payments made to *each* claimant, respectively."  *Id.* at 4.  The Soucys thus state that "[e]ach UIM claimant's per person limit is $100,000," and they provide a chart showing the distribution of Progressive and Safeco proceeds with and without the additional $100,000.  *Id.* at 5-6.  In other words, they say, "[t]he sum of available per-person coverage available to claimants after tortfeasor reductions and the apportioned $200,000 UIM settlement totals $1,000,000. Because this exceeds Plaintiff's maximum per-accident exposure, § 2902(6)(A) requires that Plaintiff tender the remaining $100,000 of $300,000 limits of the subject policy."  *Id.* at 6.  The Soucys then distinguish the Maine caselaw cited by Safeco.  *Id.* at 6-7.

### C.     Safeco's Reply

Safeco is not convinced.  *Safeco Reply* at 1-7.  First, Safeco relies on the express terms of its insurance policy, which limits all payments from any one accident to $300,000 and requires that this coverage limit be reduced by sums paid by or on

6

behalf of persons responsible.  *Id.* at 2.  Next, Safeco points to section 2902(4), which provide that payment of underinsured coverage is "subject to the terms of such coverage."  *Id.* (quoting 24-A M.R.S. § 2902(4)).  Safeco also says that its position is confirmed by "more than 40 years" of decisions from the Maine Supreme Judicial Court.  *Id.*

Turning to the Soucys' arguments, Safeco addresses section 2902(6)(A), arguing that subsection (6)(A) does not deal with the offset issue, which is covered by subsection (4), but means only that "the maximum amount theoretically available, but capped by the actual value of the injured party's claim, and by the 'per person' and 'per accident' limits of the uninsured motor vehicle policy."  *Id.* at 3.

Safeco disputes the relevance of the table of distribution in the Soucys' response, noting that it contemplates the distribution not of $300,000, but $400,000.  *Id.* at 4.  Safeco then responds to a Superior Court case and a memorandum by Attorney Louise K. Thomas, explaining underinsured coverage as of July 2016.  *Id.* at 5-6.

## IV.    LEGAL STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'"  *Green Mountain*

*Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), disregarding "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)).

## V.    DISCUSSION

### A.    The Safeco Policy

The Court begins with the terms of the insurance policy. The Maine Supreme Judicial Court has written that "[a]n insurance policy is a contract, which provides terms delineating the categories of liabilities the insurer commits itself to cover and the extent of coverage available for liabilities covered." *Korhonen v. Allstate Ins. Co.*,

8

2003 ME 77, ¶ 9, 827 A.2d 833 (citing *Johnson v. Allstate Ins. Co.*, 1997 ME 3, ¶¶ 6-7, 687 A.2d 642).    Under Maine law, "[t]he interpretation of the terms of an unambiguous insurance contract is a question of law." *Mack v. Acadia Ins. Co.*, 1998 ME 91, ¶ 5, 709 A.2d 1187 (citing *Globe Indem. Co. v. Jordan*, 634 A.2d 1279, 1282 (Me. 1993)).

There are several provisions of the Safeco policy applicable to this matter. First, the amount of underinsured coverage available is set forth in the Declarations Page of the policy: $100,000 each person and $300,000 each accident.    JST, Attach. 1, *Safeco Policy* at 3 – *Automobile Policy Decls.*

Next, the Safeco policy contains an insuring agreement for uninsured motorist coverage under Part C – Uninsured Motorist Coverage:

> A.    We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
>
> > 1.    Sustained by that insured; and
> >
> > 2.    Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle . . . .
>
> B.    "Insured" as used in the Part means:
>
> > 1.    You or any family member . . . .

*Safeco Policy* at 30-33.    These provisions establish that Safeco was responsible for payments to the Soucys under the terms of its uninsured coverage because Mr. Harriman's Progressive policy provided for limits of $50,000 per person and $100,000 per accident, thus calling into effect the underinsured provisions of the Safeco policy.

9

The Safeco policy contains limitations on its liability under Part C:

A.    The limit of liability shown in the Declarations for "each person" for Uninsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of bodily injury sustained by any one person in any one auto accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured Motorist Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1.    Insureds;

2.    Claims made;

3.    Vehicles or premiums shown in the Declarations; or

4.    Vehicles involved in the accident.

*Id.* at 32.  Thus, under the Safeco policy, whether the at-fault driver's vehicle is uninsured or underinsured, the most Safeco will pay under Part C is $300,000 for a single accident.  Thus far, there is no disagreement between the Soucys and Safeco

The disagreement begins with the following provision of the Safeco policy:

C.    With respect to coverage under item C.2 of the definition of uninsured motor vehicle, the limit of liability will be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

*Id.*  From the Court's perspective, this provision is unambiguous and requires that the limits of liability for the Safeco underinsured coverage be reduced by the sums paid by Progressive because of bodily injury on behalf of Mr. Harriman, who was

10

legally responsible for the injury, thus making the total amount of coverage available under the terms of the Safeco policy $200,000, not $300,000.

### B. The Maine Statute and Caselaw

The question then becomes whether the Maine statute requires a different result. Maine statutory law contains a provision addressing Uninsured Vehicle Coverage, 24-A M.R.S. § 2902. Subsection 1 of section 2902 requires that automobile liability policies issued for automobiles in the state of Maine must provide uninsured motorist coverage. *See* 24-A M.R.S. § 2902(1). This subsection is noncontroversial in this case.

There are two subsections that the parties interpret differently: sections 2902(4) and (6). Subsection 4 provides:

> In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which the payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

24-A M.R.S. § 2902(4). Again, from the Court's perspective, this provision compels the conclusion that Safeco is entitled to reduce its uninsured coverage by the amount Progressive paid. Placed in the context of this case, it reads:

> In the event of payment to [the Soucys] under uninsured coverage, and subject to the terms of such coverage, to the extent of such payment [Safeco] shall be entitled to the proceeds of any settlement or recovery from [Dana Harriman,] the person legally responsible for the bodily injury as to which the payment was made . . . .

The Court easily concludes that under subsection 4, Safeco is entitled to offset the Progressive payments.

11

The Soucys, however, contend that Safeco is not entitled to a credit for the Progressive payment under a different provision of section 2902, subsection (6)(A):

**6.**     When 2 or more persons are legally entitled to recover damages from a particular owner or operator of an underinsured motor vehicle, the amount of underinsured vehicle coverage applicable to each injured person is determined as provided in this subsection.

**A.**     If the underinsured motor vehicle policy applicable to 2 or more persons who are legally entitled to recover damages contains both a per person and a per accident limit, the amount of underinsured vehicle coverage applicable to each injured person is determined by subtracting any payments actually made to that person from any bodily injury liability insurance coverage applicable to the particular owner or operator of the underinsured motor vehicle from that person's, operator's or owner's underinsured vehicle coverage policy limits if applicable to that person.

24-A M.R.S. § 2902(6)(A). The Soucys say that this provision applies in this instance because multiple persons are legally entitled to recover damages from the at-fault driver of the underinsured motor vehicle when, as here, their insurance policy has split limits (per person and per accident). *Defs.' Opp'n* at 4. The Soucys focus on the phrase, "payments actually made to that person," in subsection (6)(A). *Id.* They say that this statutory phrase requires an analysis of the payments "actually made" to each claimant, and they provide a table comparing payments with and without the additional $100,000. *Id.* at 4-7.

Safeco says that the Soucys misinterpret subsection (6)(A) and that the phrase "applicable to each individual person" refers to the amount of coverage available under the uninsured policy. *Pl.'s Reply* at 1. Safeco argues that "[t]he word 'applicable,' however, does not mean 'payable.' Rather, it means the maximum amount theoretically available, but capped by the actual value of the injured party's

12

claim, and by the 'per person' and 'per accident' limits of the uninsured motor vehicle policy." *Id.* at 3.

In the Court's view, Safeco has the better argument. The Court views section 2902(6)(A) as a straightforward directive to treat each claimant's claim individually and not to conflate the "per person" and "per accident" limits. In other words, it is a directive not to allow the "per accident" limits to expand underinsured coverage beyond the "per person" limits of the underinsured policy.

Starting from the outset, section 2902(6)(A) does not address the situation where there is a single claimant. This is because there can be no confusion where a single claimant has sustained bodily injuries in excess of both liability and underinsured limits. Here, for example, assuming Siiri Soucy's bodily injuries exceeded $100,000, her claim under the Progressive policy would be limited to its $50,000 "per person" limit and her claim under the Safeco policy would be limited to its $100,000 "per person" limit, there being no argument that the higher "per accident" limit would apply.

However, once more than one person is injured, section 2902(6)(A) establishes that the same person-by-person analysis must be made:

> When 2 or more persons are legally entitled to recover damages from a particular owner or operator of an underinsured motor vehicle, the amount of underinsured vehicle coverage applicable to <u>each injured person</u> is determined as provided in this subsection.

24-A M.R.S. § 2902(6) (emphasis supplied). Thus, the introduction specifies the reason for the statute, namely to provide a roadmap for the distribution of

underinsured coverage when there are multiple claimants.  Notably, this introduction does not allude in any way to the credit rule established in subsection (4).

Section 2902(6)(A) goes on to read:

> If the underinsured motor vehicle policy applicable to 2 or more persons who are legally entitled to recover damages contains both a per person and a per accident limit . . . .

24-A M.R.S. § 2902(6)(A).  This phrase signals that the subsection is addressing an issue unique to automobile policies with split limits, not to policies that have a single limit.  If there are multiple claimants and a single limit underinsured policy, this statute does not apply because the problem it is addressing, the interrelationship between the "per person" and "per accident" limits, does not apply to a single limit policy.

Subsection 6(A) goes on to state:

> [T]he amount of underinsured vehicle coverage applicable to each injured person is determined by subtracting any payments actually made to that person from any bodily injury liability insurance coverage applicable to the particular owner or operator of the underinsured motor vehicle from that person's, operator's or owner's underinsured vehicle coverage policy limits if applicable to that person.

*Id.*  The first phrase, "amount of underinsured vehicle coverage applicable to each individual person" again informs the reader that to properly analyze the claims of claimant individually and not to be distracted by the claims of the other claimants.

The next phrase, "the amount of underinsured vehicle coverage applicable to each injured person is determined by subtracting any payments actually made to that person from any bodily injury liability insurance coverage applicable to the particular owner or operator of the underinsured motor vehicle from that person's, operator's or

14

owner's underinsured vehicle coverage policy limits if applicable to that person," seems more complicated than it is. The reference to "any bodily injury liability insurance coverage applicable to the particular owner or operator of the underinsured vehicle" refers to the Progressive policy in this case. The reference to "that person's, operator's or owner's underinsured vehicle coverage policy limits if applicable to that person" refers to Safeco's "per person" coverage limits.

Inserting the parties to this case into the statute and using Siiri Soucy as an example, the result is:

> [T]he amount of underinsured vehicle coverage applicable to [Siiri Soucy] is determined by subtracting any payments actually made to [her] from [the Progressive policy] from that [her] [Safeco] coverage policy limits if applicable to [her].

Siiri Soucy received $50,000 from Progressive and the Safeco "per person" coverage limit is $100,000, so under this statute, Safeco subtracts the payments "actually made" to Siiri, leaving $50,000 available under the "per person" provision of the Safeco policy. Applied to Garrett Soucy, who received less than $50,000 under the Progressive policy, $46,000, the amount he "actually received" is subtracted from the $100,000 "per person" provision of the Safeco policy, leaving $54,000 as the amount available under the Safeco policy. But this subsection does not change the "per accident" total amount of underinsured coverage available under the Safeco policy, and it certainly does not alter the general rule that Safeco is entitled to subtract the Progressive payments from its "per person" and "per accident" coverage limits. Indeed, to the extent subsection (6)(A) speaks to subtraction, it reinforces the

15

principle that the available amount of underinsured coverage is reduced by payments by the liability carrier.

Also, this interpretation of subsection (6)(A) is congruent with the offset directive of subsection (4) and does not create an obscurely-worded and awkward statutory exception to the general rule of offset clearly set forth in subsection (4).

The Court's conclusion is consistent with the Maine Supreme Judicial Court's guidance on this issue beginning with *Connolly v. Royal Globe Insurance Company*, 455 A.2d 932 (Me. 1983). The critical language in *Connolly* is:

> Under this amendment, the Legislature intended to permit the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party.

*Id.* at 935. Applying this principle to this case, the Soucys are entitled to have the same amount of coverage that would have been available if Mr. Harriman had been insured under a liability policy with $100,000 per person and $300,000 per accident limits.

Here, the Soucys' contention that they are entitled to a policy with $400,000 limits runs counter to decades of Maine caselaw. In *Tibbetts v. Dairyland Insurance Company*, 2010 ME 61, 999 A.2d 930, the Maine Supreme Judicial Court elaborated:

> The goal of the UM statute "was to provide an injured insured the same recovery which would have been available had the tortfeasor been insured to the same extent as the injured party." *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 8, 942 A.2d 1213, 1216 (quotation marks omitted). The statute does not support double recovery or a windfall to the plaintiff. *See id.* ¶ 9, 942 A.2d at 1216) ("There is no Maine authority to support [the plaintiff]'s contention that an insured injured by a single tortfeasor may recover a total that is greater than the insured's UM coverage limit."). In keeping with this goal, any compensatory payments

16

> received by the plaintiff reduce the gap in coverage, and are offset against the judgment.

*Id.* ¶ 12; *accord Allocca v. York Ins. Co.*, 2017 ME 186, ¶ 24, 169 A.3d 938 ("Although section 2902 requires automobile policies to include UM protection to fill gaps in the *amount* of the tortfeasor's liability insurance available to cover the UM insured's damages, it does not create a new and broader coverage, as Davison argues) (emphasis in original) (citation omitted); *Harnden v. York Ins. Co.*, No. 1-18-cv-00013-LEW, 2019 U.S. Dist. LEXIS 111160, at *6-7 (D. Me. Jul. 3. 2019).

The Soucys cite two sources of authority for their position, but the Court finds neither persuasive. The first is a 2006 decision of the Maine Superior Court, *Budd v. GEICO Gen. Ins. Co.*, No. CV-05-065, 2006 Me. Super. LEXIS 292 (Me. Super. Ct. Jan. 18, 2006) and the second an internal law office memorandum prepared by the late Attorney Louise Thomas of the law firm of Pierce Atwood, explaining underinsured coverage in Maine. *See* LOUISE K. THOMAS, UNINSURED/UNDERINSURED COVERAGE IN MAINE, (Pierce Atwood LLP, July 2016) (*Thomas Mem.*).[2] The Court acknowledges that the superior court justice in *Budd* drew a different conclusion than the one the Court is drawing here. But, in the Court's view, his conclusion also differs from authoritative caselaw from the Maine Supreme Judicial Court. Given the dense language of section 2906, it is not surprising that a highly experienced judge at one point came to a different conclusion, but the vast weight of authority both before and

---

[2]    The Thomas memorandum is found in full as attachment one to the Notice of Filing of Supplemental Authority on Defendants' Opposition to Summary Judgment (ECF No. 18).

after 2006 in both Maine and federal courts is consistent with the conclusion the Court is reaching in this opinion, so it views *Budd* as an outlier.

As for the Thomas memorandum, Ms. Thomas was a highly respected insurance coverage attorney, but, as Safeco points out in its reply, in her memorandum, she elsewhere made it plain that the underinsured carrier is entitled to the reduction Safeco is seeking here. *Def.'s Reply* at 6 (quoting *Thomas Mem.* at 18).

In short, based on the provisions of the Safeco policy, the statutory directives of the Maine Legislature, and the authoritative interpretations of Maine law by the Maine Supreme Judicial Court, the Court concludes that Safeco is entitled to reduce the amount of coverage available under its underinsured automobile coverage by the amount Progressive Insurance Company has paid in this case.

## VI.    CONCLUSION

The Court GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 11) in favor of Safeco National Insurance Company and against Garrett and Siiri Soucy.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of August, 2026